Rafey Balabanian (SBN 315962)
rbalabanian@edelson.com
Lily Hough (SBN 315277)
lhough@edelson.com
Aaron Lawson (SBN 319306)
alawson@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

*Counsel for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| CLARENCE RISHER, individually and on behalf of all others similarly situated, <br><br> *Plaintiff*, <br><br> v. <br><br> ADECCO, INC., a Delaware corporation, and MYA SYSTEMS, INC., a Delaware corporation. <br><br> *Defendants*. | Case No.: <br><br> **CLASS ACTION COMPLAINT FOR** <br><br> **(1) Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227.** |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Clarence Risher brings this Class Action Complaint and Demand for Jury Trial against Defendants Adecco, Inc., and Mya Systems, Inc., to stop their practice of making unwanted and unsolicited text message calls to the cellular telephones of consumers and to obtain redress for all persons injured by its conduct. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief.

## NATURE OF THE ACTION

1. Defendant Adecco is a global staffing and job placement service that, for a fee, helps

CLASS ACTION COMPLAINT                         1

individuals find employment in various industries.

2. In order to advertise the availability of its staffing services, Adecco partnered with an artificial intelligence company named Mya. Mya is a chat bot that uses machine learning and natural language to communicate with prospective clients on a variety of platforms, including by text message.

3. However, Adecco leveraged the Mya chat bot to advertise its job placement services by sending unsolicited text messages to consumers' cell phones in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

4. Plaintiff Risher, on behalf of himself and the putative Class, seeks an injunction requiring Defendants to cease all unlawful text messaging activities alleged in this Complaint, and an award of statutory damages to Plaintiff and the Class for each such violation.

**PARTIES**

5. Plaintiff Clarence Risher is a natural person and citizen of the State of California.

6. Defendant Adecco, Inc., is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 10151 Deerwood Park, Boulevard, Building 200, Suite 400, Jacksonville, Florida, 32256.

7. Defendant Mya Systems, Inc., is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 27 Maiden Lane, Suite 300, San Francisco, California 94108.

**JURISDICTION AND VENUE**

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the Class is a citizen of a different state than any Defendant, (ii) the amount in controversy exceeds, $5,000,000, exclusive of interests and costs, and (iii) none of the exceptions under that subsection apply to this action.

9. This Court has personal jurisdiction over Defendants because Defendants conduct business in the State of California.

10. Venue is proper pursuant to 28 U.S.C. § 1391(b) because at least one Defendant

resides in this District and because a substantial part of the events or omissions giving rise to the Plaintiff's and the putative Class's claims arose, in a substantial part, in this District.

**COMMON FACTUAL ALLEGATIONS**

11. Adecco offers a job placement service for employees by matching them with prospective employers. Individuals turn to Adecco to help them find work for either short-term or contract-to-hire positions.

12. To promote its services, Adecco sought to automate its solicitation process by entering into a 3-year partnership on August 10, 2017 with Defendant Mya—an artificial intelligence chat bot that uses natural language and machine learning.

13. As a "chat bot," Mya has been programmed to recognize a consumer's responses and lead a conversation with an individual in natural language by mimicking a human. In fact, Mya can autonomously lead multiple conversations simultaneously.

14. Mya advertises its artificial intelligence and automation abilities on its website by explaining that it is able to connect with *1,000 candidates in only 11 minutes*.

15. Before Mya begins promoting Adecco's job placement services, it first compiles a list of so-called "passive" or "cold" leads by scouring Adecco's database. These are individuals who may have contacted Adecco about specific offerings in the last decade, if not longer, but are now "passive" or "cold" because the lead has colloquially "gone cold" and the individual is no longer interested in Adecco's job search service and has not contacted Adecco for many years.

16. Adecco then uses the Mya chat bot and its natural language abilities to send text messages to individuals, *en masse*, advertising its job search services and to engage in conversations with thousands of individuals in order to solicit them to enter into a fee-based contract with Adecco.

17. In the text messages, Mya broadly states that Adecco is seeking to hire individuals for a generic job position and solicits the text recipient by asking whether he or she has interest in chatting with Mya (the "Promotional Text Message").[1] See Figure 1.

---

[1] "Promotional Text Message" means any text message in which Mya is promoting Adecco's services.

CLASS ACTION COMPLAINT                                                3



**(Figure 1)**

18. The recipients of the Promotional Text Message did not recently inquire about Adecco's job search services, and they did not request Adecco or Mya to send them any information about Adecco's services or job placements. In fact, Plaintiff and members of the putative Class could not possibly have consented to being contacted by Mya as Adecco did not even have a contract with Mya at the time they had any interaction with Adecco.

19. Adecco's use of the Mya chat bot to send text messages clearly indicates that the text messages were sent using an automatic telephone dialing system ("ATDS"). Specifically, the hardware and software used to send the messages has the capacity to store, produce, and dial random or sequential numbers, and did in fact receive and store lists of telephone numbers from Adecco's database and other sources, and dialed such numbers, *en masse*, in an automated fashion without human intervention. By Defendant Mya's own admission, its system is capable of dialing *at least* 1,000 numbers in 11 minutes (a rate of 1.5 calls per second). The automated dialing equipment

includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous text message calls simultaneously and entirely without human intervention.

### FACTS SPECIFIC TO PLAINTIFF RISHER

20. Plaintiff Risher only interacted with Adecco in 2008.

21. Plaintiff submitted information to seek Adecco's job placement services for either a "data entry" position or a "desktop support technician."[2]

22. However, Plaintiff was never hired by or through Adecco for either of these positions. Since 2008, Plaintiff has had no contact or relationship with Adecco. At the time Plaintiff interacted with Adecco, he did not agree, in any capacity, to be contacted by text message or using an ATDS.

23. On July 10, 2019—*nearly 11 years later*—Plaintiff received a Promotional Text Message from Adecco and Mya stating "Hello Clarence, this is Mya from Adecco. We're hiring for Refurbisher roles, and I thought you might be interested. Do you have a minute to chat via text? You can also reply 'no more texts'." After ignoring the Promotional Text Message, Plaintiff received a subsequent text message asking, "Hi Clarence! It's Mya again. Are you free to chat for a few minutes?" *See* Figure 1.

24. The "refurbisher role" advertised in Defendants' text message is unrelated to and unlike either of the positions Plaintiff submitted information for over a decade ago.[3]

---

[2] The job responsibilities for a typical data entry position include "Enter, record and verify numerical data for use in maintaining and managing records, input and verify data, and communicate with divisions and stores to furnish or obtain information concerning various issues." Likewise, the job responsibilities for a typical desktop support technician position include "Perform high level local desktop support for onsite personnel as well as remote support using remote control tools, document, track and monitor issues escalated to him/her to ensure a timely resolution, coordinate with management, IT personnel, and vendors as required to address issues related to existing IT systems and implementations of new IT technologies."

[3] Specifically, a "refurbisher" job has responsibilities such as "working in a warehouse environment, you'll be making the magic happen by cleaning and doing simple cosmetic upgrades to cable boxes, removing/installing covers, replacing screens, putting rubber stoppers on the bottom of units, and simple cleaning of the units, using blower vacuums to remove dust and dirt, and

CLASS ACTION COMPLAINT                        5

25. Defendants contacted Plaintiff Risher for the express purpose of soliciting him to enter into a commercial transaction wherein Plaintiff would pay Adecco fees in exchange for using their staffing and job placement service.

26. Plaintiff did not provide Adecco or Mya with his prior express written consent—or any other form of consent—to receive Promotional Text Messages from Adecco and Mya. Similarly, Risher has not previously contacted Mya or provided it with any form of consent to receive the Promotional Text Messages.

## CLASS ACTION ALLEGATIONS

27. **Class Definition**: Plaintiff Clarence Risher brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and a Class of similarly situated individuals defined as follows:

> All persons in the United States who (1) were sent one or more Promotional Text Message and (2) who last interacted with Adecco before August 10, 2017.

Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and its officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

28. **Numerosity**: The exact number of Class members is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants have sent text messages to thousands of consumers who fall into the definition of the Class. Class members can be identified through Defendants' records.

---

wiping down units with an all-purpose cleaning agent. Must be comfortable with standing for the majority of their shift and able to lift up to 12 lbs (per box)."

CLASS ACTION COMPLAINT                      6

29. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the putative Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

  (a) Whether Defendants' conduct violated the TCPA;

  (b) Whether Defendants sent text messages using an automatic telephone dialing system ("ATDS"), as contemplated by the TCPA;

  (c) Whether Defendants systematically sent text messages to persons who did not previously provide it with prior express written consent, or any other consent, to receive such text message calls; and

  (d) Whether Plaintiff and the members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

30. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff's claims are representative of the claims of the other members of the Class. That is, Plaintiff and the Class members sustained damages as a result of Defendants' conduct and received substantially similar text messages. Plaintiff also has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to the Class.

31. **Predominance and Superiority**: Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, as joinder of all members of the Class is impracticable. Individual litigation would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale,

CLASS ACTION COMPLAINT       7

and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

32. Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and in discovery.

**FIRST CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227(b)(1)(A)(iii)**
**(On behalf of Plaintiff and the Class)**

33. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

34. Defendants sent Promotional Text Messages advertising Adecco's job placement service to Plaintiff's and the Class members' cellular telephones without their prior express written consent, or any other consent.

35. The Promotional Text Messages were sent using an ATDS. Specifically, the hardware and software used to send the messages has the capacity to store, produce, and dial random or sequential numbers, and did in fact receive and store lists of telephone numbers, and dialed dial such numbers, *en masse*, in an automated fashion without human intervention. By Defendant Mya's own admission, its system is capable of dialing *at least* 1,000 numbers in 11 minutes (a rate of 1.5 calls per second). The automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous text message calls simultaneously and entirely without human intervention.

36. Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii) by having text messages sent to Plaintiff's and members of the Class's cellular telephones, using an ATDS, and without prior express consent.

37. Defendants also violated 47 CFR § 64.1200(a)(2) by having text messages advertising Adecco's job placement services sent to Plaintiff's and members of the Class's cellular telephones, using an ATDS, and without prior express written consent.

38. As a result of Defendants' unlawful conduct, Plaintiff and the members of the putative Class suffered actual damages and have also had their rights to privacy adversely impacted. Plaintiff and the Class are therefore entitled to, among other things, a minimum of $500 in statutory

CLASS ACTION COMPLAINT                    8

damages for each such violation under 47 U.S.C. § 227(b)(3)(B).

39. Because Defendants' misconduct was willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(b)(3), treble the amount of statutory damages recoverable by the Plaintiff and the other members of the putative Class.

40. Additionally, as a result of Defendants' unlawful conduct, Plaintiff and the other members of the Class are entitled to an injunction under 47 U.S.C. § 227(b)(3)(A) to ensure that Defendants' violations of the TCPA do not continue into the future.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Clarence Risher, individually and on behalf of the Class, prays for the following relief:

(a) An order certifying the Class as defined above, appointing Plaintiff Risher as the representative of the Class, and appointing his counsel as Class Counsel;

(b) An order declaring that Defendants' actions, as set out above, violate the TCPA;

(c) An order declaring that the telephone calling equipment used to send the text messages at issue here constitutes an automatic telephone dialing system under the TCPA;

(d) An injunction requiring Defendants to cease all unlawful text message activities and enjoining Defendants from using automated or computerized dialing equipment to place text message calls without consent;

(e) An award of statutory and treble damages; and

(f) Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

**CLARENCE RISHER**, individually and on behalf of all others similarly situated,

Dated: September 5, 2019       By:  s/ Rafey Balabanian
                                    One of Plaintiff's Attorneys

CLASS ACTION COMPLAINT                 9

Rafey Balabanian (SBN 315962)
rbalabanian@edelson.com
Lily Hough (SBN 315277)
lhough@edelson.com
Aaron Lawson (SBN 319306)
alawson@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

*Counsel for Plaintiff and the Putative Class*

CLASS ACTION COMPLAINT                    10