Rafey Balabanian (SBN 315962)
rbalabanian@edelson.com
Lily Hough (SBN 315277)
lhough@edelson.com
Aaron Lawson (SBN 319306)
alawson@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

*Counsel for Plaintiff and the Putative Class*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| CLARENCE RISHER, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>ADECCO, INC., a Delaware corporation, ADECCO USA, INC., a Delaware corporation, and LOCUTUS, INC., a Delaware corporation.<br><br>*Defendants*. | Case No.: 19-cv-05602-RS<br><br>**FOURTH AMENDED CLASS ACTION COMPLAINT FOR**<br><br>**(1) Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227.** |

**FOURTH AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Clarence Risher brings this Class Action Complaint and Demand for Jury Trial against Defendants Adecco, Inc., Adecco USA, Inc. (together "Adecco" or "Defendant Adecco"). and Locutus, Inc. (f/k/a Mya Systems, Inc.)[1] to stop their practice of making unwanted and unsolicited text message calls to the cellular telephones of consumers and to obtain redress for all

---

[1] On June 28, 2021, the party formerly known as Mya Systems, Inc. filed a notice of change in name to Locutus, Inc. (Dkt. 108.) Plaintiff refers to Defendant Locutus as "Mya" herein for the sake of consistency with previous pleadings.

FOURTH AMENDED CLASS ACTION COMPLAINT      1      Case No.: 19-cv-05602-RS

persons injured by its conduct. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief.

## NATURE OF THE ACTION

1. Defendant Adecco is a global staffing and job placement service that, for a fee, matches job-seeking individuals with employment opportunities in various industries.

2. In order to advertise the availability of its staffing services, Adecco partnered with an artificial intelligence company named Mya. Mya is a chat bot that uses machine learning and natural language to communicate with prospective clients on a variety of platforms, including by text message.

3. However, Adecco leveraged the Mya chat bot to advertise its job placement services by sending unsolicited text messages to consumers' cell phones in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

4. Plaintiff Risher, on behalf of himself and the putative Classes (defined below), seeks an injunction requiring Defendants to cease all unlawful text messaging activities alleged in this Complaint, and an award of statutory damages to Plaintiff and the Classes for each such violation.

## PARTIES

5. Plaintiff Clarence Risher is a natural person and citizen of the State of California.

6. Defendant Adecco, Inc., is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 10151 Deerwood Park, Boulevard, Building 200, Suite 400, Jacksonville, Florida, 32256.

7. Defendant Adecco USA, Inc., is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 10151 Deerwood Park, Boulevard, Building 200, Suite 400, Jacksonville, Florida, 32256.

8. Defendant Locutus, Inc. (f/k/a Mya Systems, Inc.), is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 27 Maiden Lane, Suite 300, San Francisco, California 94108.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the Class is a citizen of a different state than any Defendant, (ii) the amount in controversy exceeds, $5,000,000, exclusive of interests and costs, and (iii) none of the exceptions under that subsection apply to this action.

10. This Court has personal jurisdiction over Defendants because Defendants conduct business in the State of California.

11. Venue is proper pursuant to 28 U.S.C. § 1391(b) because at least one Defendant resides in this District and because a substantial part of the events or omissions giving rise to the Plaintiff's and the putative Class's claims arose, in a substantial part, in this District.

## COMMON FACTUAL ALLEGATIONS

12. Adecco offers a job placement service for job seekers by matching them with prospective employers. Adecco collects potential leads by encouraging them to "apply" for jobs on Adecco's website, where they can either apply to a specific job opening (offered by Adecco's employer customers) or, in Adecco's words, "fill out a short application, send it to us and let us find you a job."[2]

13. Adecco contemporaneously markets "staffing solutions" to employers, whereby it outsources (for a fee) the job seekers solicited through its website for either short-term or contract-to-hire positions with its employer customers.[3]

14. Adecco uses a separate platform and process—on a separate website—to promote internal Adecco career openings and recruit its own employees, such as recruiters, search consultants, staffing specialists, and business development managers for Adecco's proprietary

---

[2] *Here's How to Apply Now,* AdeccoUSA.com, https://www.adeccousa.com/working-with-a-staffing-agency/ (last visited November 13, 2019).

[3] *Workplace Staffing Solutions,* AdeccoUSA.com, https://www.adeccousa.com/employers/staffing-solutions/ (last visited November 13, 2019).

FOURTH AMENDED CLASS ACTION COMPLAINT    3    Case No.: 19-cv-05602-RS

staffing services.[4] Upon information and belief, Adecco does not send the text messages described below to individuals who express interest in Adecco-affiliated careers, but only to those who can be placed with Adecco's employer customers.

15. To promote its services, Adecco sought to automate its solicitation process by entering into a 3-year partnership on August 10, 2017 with Defendant Mya—an artificial intelligence chat bot that uses natural language and machine learning.

16. As a "chat bot," Mya has been programmed to recognize a consumer's responses and lead a conversation with an individual in natural language by mimicking a human. In fact, Mya can autonomously lead multiple conversations simultaneously.

17. Mya advertises its artificial intelligence and automation abilities on its website by explaining that it is able to connect with *1,000 candidates in only 11 minutes*.

18. Mya's communication service allows partners like Adecco to supply generic marketing content, which is stored on Mya's hosted platform and then used to build and send text messages to numbers provided by Adecco.

19. However, Mya can also generate a list of numbers to dial from the larger database provided by Adecco. Before Mya begins promoting Adecco's job placement services, it first compiles a list of so-called "passive" or "cold" leads by scouring Adecco's database. These are individuals who may have contacted Adecco about specific offerings in the last decade, if not longer, but are now "passive" or "cold" because the lead has colloquially "gone cold" and the individual is no longer interested in Adecco's job search service and has not contacted Adecco for many years. In this vein, Mya decides whether, when, and to whom a message is sent.[5]

20. Mya also controls a large portion of the content of the text messages sent on

---

[4] *Careers*, AdeccoGroup.com, https://careers.adeccogroup.com/ (last visited November 13, 2019).

[5] Although Plaintiff does not know, based on the information available to him, precisely how or why Mya decided to send a text message to him, discovery will likely confirm that Mya identified him as a "cold" lead in Adecco's database and targeted him on that basis.

FOURTH AMENDED CLASS ACTION COMPLAINT   4   Case No.: 19-cv-05602-RS

Adecco's behalf. In the text messages, Mya broadly states that Adecco is seeking to hire individuals for a generic job position and solicits the text recipient by asking whether he or she has interest in chatting with Mya (the "Promotional Text Message").[6] See Figure 1.

21.     Using the natural language abilities of its chat bot, Mya then independently controls when and what text messages are sent in response to consumers. While Adecco directs the promotional content of the messages (i.e., the generic statements promoting Adecco's job placement services and directing recipients to Adecco's website and/or mobile application), Mya engages in a dynamic, persuasive and marketing-oriented dialog with the text recipients using machine learning tasks including semantic parsing, named entity recognition, and multiple intent classification.[7]

---

[6] "Promotional Text Message" means any text message in which Mya is promoting Adecco's services.

[7] Semantic parsing translates natural language into a formal representation of its meaning on which a machine can act. Named entity recognition classifies named entities in the recipient's text message into pre-defined categories, helping the machine promptly understand the subject of the text and deliver relevant content in response. Intent classification uses a prepossessed training data to classify the recipient's text message into an intended action. With the help of these three machine learning tasks, Mya "understands unstructured and open dialogue, allowing candidates to communicate using various languages, idiomatic phrases, or slang across any messaging channel (SMS, WhatsApp, etc.)." *Meet Mya,* Mya.com, https://www.mya.com/meetmya/ (last visited November 13, 2019).

FOURTH AMENDED CLASS ACTION COMPLAINT     5                    Case No.: 19-cv-05602-RS

[Screenshot of text message conversation with +14178156792, Wednesday, July 10, 2019:

- 09:36 — "Hello Clarence, this is Mya from Adecco. We're hiring for Refurbisher roles, and I thought you might be interested. Do you have a minute to chat via text? You can also reply 'no more texts'."
- 15:16 — "Hi Clarence! It's Mya again. Are you free to chat for a few minutes?"
- 15:49 (C) — "Hi, Mya. Where did you get my contact information? I haven't dealt with Adecco in almost a decade."
- 15:49 — "You may have applied or one of our talent finders found your resume and thought you'd be a great fit for this position. I apologize if we haven't chatted before. Would you like to chat for a few minutes?"]

**(Figure 1)**

22.     In the Promotional Text Messages sent to Plaintiff, Mya performed as advertised, appearing to "understand[] context, complex, multi-part statements, changed answers, or interjections and [to] shift the direction of conversations to an intended goal."[8] For example, when Plaintiff did not respond to the Promotional Text Message sent to him on July 10, 2019, Mya controlled the timing, sending, and content of a follow-up message initiated approximately six hours later. When Plaintiff responded to that message with both a question and a statement indicating his non-relationship with Adecco, Mya initiated a third customized message that both answered Plaintiff's question and acknowledged his estrangement. Mya's machine learning capabilities

---

[8] *Id.*

FOURTH AMENDED CLASS ACTION COMPLAINT     6                    Case No.: 19-cv-05602-RS

enabled it to understand the subject of Plaintiff's message and to tailor the order, timing, and content of its response to give Plaintiff the impression that a human was behind the communication, even though no human had any direct involvement in sending the messages.

23. Upon information and belief, Mya also determines what number a text message will come from.

24. The recipients of the Promotional Text Message did not recently inquire about Adecco's job search services, and they did not request Adecco or Mya to send them any information about Adecco's services or job placements. In fact, Plaintiff and members of the putative Class could not possibly have consented to being contacted by Mya as Adecco did not even have a contract with Mya at the time they had any interaction with Adecco.

25. The use of the Mya chat bot to send text messages clearly indicates that the text messages were sent using an automatic telephone dialing system ("ATDS"). Specifically, the hardware and software used to send the messages has the capacity to store, produce, and dial random or sequential numbers, and did in fact receive and store lists of telephone numbers from Adecco's database and other sources, and dialed such numbers, *en masse*, in an automated fashion using a sequential or random number generator. By Defendant Mya's own admission, its system is capable of dialing *at least* 1,000 numbers in 11 minutes (a rate of 1.5 calls per second).

**FACTS SPECIFIC TO PLAINTIFF RISHER**

26. Plaintiff Risher only interacted with Adecco in 2008.

27. Plaintiff submitted information to seek Adecco's job placement services for either a "data entry" position or a "desktop support technician."[9]

---

[9] The job responsibilities for a typical data entry position include "Enter, record and verify numerical data for use in maintaining and managing records, input and verify data, and communicate with divisions and stores to furnish or obtain information concerning various issues." Likewise, the job responsibilities for a typical desktop support technician position include "Perform high level local desktop support for onsite personnel as well as remote support using remote control tools, document, track and monitor issues escalated to him/her to ensure a timely resolution, coordinate with management, IT personnel, and vendors as required to address issues related to existing IT systems and implementations of new IT technologies."

FOURTH AMENDED CLASS ACTION COMPLAINT   7   Case No.: 19-cv-05602-RS

28.     However, Plaintiff was never hired by or through Adecco for either of these positions. Since 2008, Plaintiff has had no contact or relationship with Adecco. At the time Plaintiff interacted with Adecco, he did not agree, in any capacity, to be contacted by text message or using an ATDS or artificial or prerecorded voice.

29.     On July 10, 2019—*nearly 11 years later*—Plaintiff received a Promotional Text Message from Adecco and Mya stating "Hello Clarence, this is Mya from Adecco. We're hiring for Refurbisher roles, and I thought you might be interested. Do you have a minute to chat via text? You can also reply 'no more texts'." After ignoring the Promotional Text Message, Plaintiff received a subsequent text message asking, "Hi Clarence! It's Mya again. Are you free to chat for a few minutes?" *See* Figure 1.

30.     The "refurbisher role" advertised in Defendants' text message is unrelated to and unlike either of the positions Plaintiff submitted information for over a decade ago.[10]

31.     Defendants contacted Plaintiff Risher for the express purpose of soliciting him to enter into a commercial transaction wherein Adecco would collect a fee in exchange for placing Plaintiff in a job through Adecco's staffing and job placement service.

32.     The phone number on which Plaintiff received the Promotional Text Message is his personal cell phone number, is not affiliated with any business, is used primarily by Plaintiff as a personal and/or residential line, and has been registered with the National Do Not Call Registry since July 18, 2007 for the express purpose of avoiding unwanted telephone solicitations.

33.     Plaintiff had no existing business relationship with Adecco or Mya at the time he received the Promotional Text Messages described above and had not entered into any business

---

[10] Specifically, a "refurbisher" job has responsibilities such as "working in a warehouse environment, you'll be making the magic happen by cleaning and doing simple cosmetic upgrades to cable boxes, removing/installing covers, replacing screens, putting rubber stoppers on the bottom of units, and simple cleaning of the units, using blower vacuums to remove dust and dirt, and wiping down units with an all-purpose cleaning agent. Must be comfortable with standing for the majority of their shift and able to lift up to 12 lbs (per box)."

FOURTH AMENDED CLASS ACTION COMPLAINT   8                    Case No.: 19-cv-05602-RS

transactions with Adecco or Mya during the 18 months preceding such texts.

34.     Plaintiff did not provide Adecco or Mya with his prior express written consent—or any other form of consent—to receive Promotional Text Messages from Adecco and Mya. Similarly, Risher has not previously contacted Mya or provided it with any form of consent to receive the Promotional Text Messages.

## CLASS ACTION ALLEGATIONS

35.     **Class Definitions**: Plaintiff Clarence Risher brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and two Classes of similarly situated individuals defined as follows:

> **Robocall Class:** All persons in the United States who were sent one or more text messages through Mya's chat bot on behalf of Adecco.
>
> **Do Not Call Class:** All persons in the United States who were sent more than one text message through Mya's chat bot on behalf of Adecco within a 12-month period at a telephone number that had been registered with the National Do Not Call Registry for at least 30 days at the time of each text message.

(Together, the "Classes").

Excluded from the Classes are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and its officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

36.     **Numerosity**: The exact number of Class members is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants have sent text messages to thousands of consumers who fall into the definition of the Classes. Class members can be identified through Defendants' records.

37.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the putative Classes, and those questions predominate over

any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) Whether Defendants' conduct violated the TCPA;

(b) Whether Defendants sent text messages using an automatic telephone dialing system ("ATDS"), as contemplated by the TCPA;

(c) Whether Defendants systematically sent text messages to persons who did not previously provide it with prior express written consent, or any other consent, to receive such text message calls; and

(d) Whether Plaintiff and the members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

38. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff's claims are representative of the claims of the other members of the Classes. That is, Plaintiff and the Class members sustained damages as a result of Defendants' conduct and received substantially similar text messages. Plaintiff also has no interests antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to the Classes.

39. **Predominance and Superiority**: Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, as joinder of all members of the Classes is impracticable. Individual litigation would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

40. Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and in discovery.

**FIRST CAUSE OF ACTION**
**"ATDS" Violation of 47 U.S.C. § 227(b)(1)(A)(iii)**
**(On behalf of Plaintiff and the Robocall Class)**

41. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

42. Defendants sent Promotional Text Messages advertising Adecco's job placement service to Plaintiff's and the Class members' cellular telephones without their prior express written consent, or any other consent.

43. The Promotional Text Messages were sent using an ATDS. Specifically, the hardware and software used to send the messages has the capacity to retrieve telephone numbers from a database using a sequential number generator and store those numbers. In other words, Defendants' equipment uses a sequential number generator to loop through Defendants' databases producing numbers, then stores those numbers until they are combined with specific pre-recorded message content and transmitted at a later time, all without human intervention. By Defendant Mya's own admission, its system is capable of dialing *at least* 1,000 numbers in 11 minutes (a rate of 1.5 calls per second).

44. Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii) by having text messages sent to Plaintiff's and members of the Class's cellular telephones, using an ATDS, and without prior express consent.

45. Defendants also violated 47 CFR § 64.1200(a)(2) by having text messages advertising Adecco's job placement services sent to Plaintiff's and members of the Class's cellular telephones, using an ATDS, and without prior express written consent.

46. As a result of Defendants' unlawful conduct, Plaintiff and the members of the putative Class suffered actual damages and have also had their rights to privacy adversely impacted. Plaintiff and the Class are therefore entitled to, among other things, a minimum of $500 in statutory damages for each such violation under 47 U.S.C. § 227(b)(3)(B).

47. Because Defendants' misconduct was willful and knowing, the Court should,

pursuant to 47 U.S.C. § 227(b)(3), treble the amount of statutory damages recoverable by the Plaintiff and the other members of the putative Class.

48. Additionally, as a result of Defendants' unlawful conduct, Plaintiff and the other members of the Class are entitled to an injunction under 47 U.S.C. § 227(b)(3)(A) to ensure that Defendants' violations of the TCPA do not continue into the future.

**SECOND CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227(c)(5)**
**(On behalf of Plaintiff and the Do Not Call Class)**

49. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

50. 47 U.S.C. § 227(c)(5) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may bring a private action based on that violation. The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)—provides that "[n]o person or entity shall initial any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government."

51. Defendants violated 47 C.F.R. § 64.1200(c) by sending more than one Promotional Text Messages to Plaintiff and the members of the Do Not Call Class within a 12-month period without their prior express written consent, or any other consent.

52. Each such call was directed to a telephone number that had been registered with the National Do Not Call Registry for at least 30 days.

53. As a result of Defendants' unlawful conduct, Plaintiff and the members of the Do Not Call Class suffered actual damages and have also had their rights to privacy adversely impacted. Plaintiff and the Do Not Call Class are therefore entitled to, among other things, a minimum of $500 in statutory damages for each such violation of 47 C.F.R. § 64.1200 under 47 U.S.C. § 227(c)(5).

54. Because Defendants' misconduct was willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by Plaintiff

and the other members of the Do Not Call Class.

### THIRD CAUSE OF ACTION
### "Artificial or Prerecorded Voice" Violation of 47 U.S.C. § 227(b)(1)(A)(iii)
### (On behalf of Plaintiff and the Robocall Class)

55.   Plaintiff incorporates the foregoing allegations as if fully set forth herein.

56.   Defendants sent Promotional Text Messages advertising Adecco's job placement service to Plaintiff's and the Class members' cellular telephones without their prior express written consent, or any other consent.

57.   The Promotional Text Messages were sent using Mya's artificial voice or prerecorded messages. Specifically, the Promotional Text Messages were composed of pre-written templates of text and were automatically sent with no human involvement in the directing of the message.

58.   Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii) by having text messages sent to Plaintiff's and members of the Class's cellular telephones, using an artificial voice and/or prerecorded message, and without prior express consent.

59.   Defendants also violated 47 CFR § 64.1200(a)(2) by having text messages sent to Plaintiff's and members of the Class's cellular telephones, using an artificial voice and/or prerecorded message, and without prior express consent.

60.   As a result of Defendants' unlawful conduct, Plaintiff and the members of the putative Class suffered actual damages and have also had their rights to privacy adversely impacted. Plaintiff and the Class are therefore entitled to, among other things, a minimum of $500 in statutory damages for each such violation under 47 U.S.C. § 227(b)(3)(B).

61.   Because Defendants' misconduct was willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(b)(3), treble the amount of statutory damages recoverable by the Plaintiff and the other members of the putative Class.

62.   Additionally, as a result of Defendants' unlawful conduct, Plaintiff and the other members of the Class are entitled to an injunction under 47 U.S.C. § 227(b)(3)(A) to ensure that

Defendants' violations of the TCPA do not continue into the future.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Clarence Risher, individually and on behalf of the Classes, prays for the following relief:

(a) An order certifying the Classes as defined above, appointing Plaintiff Risher as the representative of the Classes, and appointing his counsel as Class Counsel;

(b) An order declaring that Defendants' actions, as set out above, violate the TCPA;

(c) An order declaring that the telephone calling equipment used to send the text messages at issue here constitutes an automatic telephone dialing system under the TCPA;

(d) An order declaring that Mya's chatbot constitutes an artificial or prerecorded voice under the TCPA;

(e) An order declaring that Defendants action violate the TCPA's do-not-call regulations;

(f) An injunction requiring Defendants to cease all unlawful text message activities and enjoining Defendants from using automated or computerized dialing equipment to place text message calls without consent;

(g) An award of statutory and treble damages; and

(h) Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

**CLARENCE RISHER**, individually and on behalf of all others similarly situated,

Dated: September 23, 2021          By: _____
                                       One of Plaintiff's Attorneys

Rafey Balabanian (SBN 315962)

FOURTH AMENDED CLASS ACTION COMPLAINT    14                    Case No.: 19-cv-05602-RS

rbalabanian@edelson.com
Lily Hough (SBN 315277)
lhough@edelson.com
Aaron Lawson (SBN 319306)
alawson@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

*Counsel for Plaintiff and the Putative Class*

FOURTH AMENDED CLASS ACTION COMPLAINT   15         Case No.: 19-cv-05602-RS